*FOR PUBLICATION*

---

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**
**APPELLATE DIVISION**

---

| | |
|---|---|
| ERIC STEVENS III, | ) D.C. CRIM. APP. NO. 2006/044 |
| | ) |
| Appellant, | ) Sup.Ct.Crim. No. 547/2005 |
| | ) |
| v. | ) |
| | ) |
| PEOPLE OF THE VIRGIN ISLANDS, | ) |
| | ) |
| Appellee. | ) |

On Appeal from the Superior Court of the Virgin Islands
Superior Court Judge: Hon. Darryl D. Donohue

Considered: March 30, 2010
Filed: July 29, 2011

BEFORE:    CURTIS V. GÓMEZ, Senior Sitting Judge, District Court
of the Virgin Islands; ANNE E. THOMPSON, Judge of the
District Court of New Jersey; and JAMES S. CARROLL III,
Judge of the Superior Court of the Virgin Islands,
sitting by designation.

ATTORNEYS:

**Rene Dowling, Esq.**
St. Croix, U.S.V.I.
         Attorney for Appellant,

**Maureen Phelan, Esq., AAG & Tiffany Robinson, Esq., AAG**
St. Thomas, U.S.V.I.
         Attorneys for Appellee.

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 2

Chief Judge Curtis V. Gómez delivers the majority opinion joined by Judge Anne E. Thompson.

| **Memorandum Opinion** |
| --- |

This appeal concerns two issues. First, whether the Superior court erroneously admitted the appellant's confession; and second, whether the Superior Court erred when denying his motion for judgment of acquittal.

## I.   FACTUAL AND PROCEDURAL POSTURE

On October 31, 2005, two houses were burglarized on New Street in Christiansted, St. Croix.   Corrine Belardo resided at 7A New Street ("7A"). Bernadette Welcome resided at 7B - 8ADA New Street ("7B"). The perpetrators gained access to 7B by bending the louvers in a window. The Virgin Islands Police Department ("VIPD") responded. VIPD processed the scene, made a report and itemized a description of the stolen items. (J.A. 34.)

Later that day, VIPD officers were dispatched to the scene after a separate report that a shotgun and camouflage pants were found in the bushes near 7A.   The pants were recovered.   The shotgun was not.   During the course of the shotgun investigation, VIPD officers learned that Eric Stevens' ("Appellant" or "Stevens") residence on Little Hospital Street and the burglarized home on New Street were connected by a short path

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 3

through some bushes.

Officers went to Stevens' residence and made contact with Stevens' roommate, Raulston Valentine ("Valentine"). Valentine informed VIPD officers that Stevens had left shortly before they arrived. Stevens and Valentine slept in different bedrooms. However, Valentine allowed the officers inside the residence and directed them to Stevens' bedroom.

Officers entered Stevens' bedroom. On Stevens' bed they observed in plain view, several items matching the description of items reportedly stolen from 7B, including a pair of Pentax binoculars, an Audiovox walkie talkie, a pearl necklace, an Olympus digital camera, a case of compact discs and a bottle of Channel perfume. Subsequently, the officers spoke with Stevens' mother who informed them that he was on a job in St. Thomas.

On December 13, 2005, a warrant was issued for Stevens' arrest. The officers persuaded Stevens' mother to convince him to return to St. Croix. He returned on December 18, 2005. Upon his arrival, Stevens reported to the Marshall Command Police Station. There, he was advised of his *Miranda* rights and signed a waiver of his rights. (J.A. 292, 330.) Stevens was subsequently questioned. He admitted entering 7B through a window which was pried open by one of his companions, searching the premises and

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 4

taking "binoculars, [a] digital camera [and] three white pearl strand bracelets." (J.A. 462.)  Stevens later signed a written statement memorializing his confession. (*Id.*)

After Stevens was arrested, he filed a motion to suppress the physical evidence in his bedroom and his written confession. Following a hearing held on June 9, 2006,  the court concluded that the warrant-less search of Stevens' bedroom was unlawful. The court suppressed the evidence from his bedroom as inadmissable 'fruits of the poisonous tree.'  The court also suppressed excerpts from page 5 of his written confession, where he described the stolen items that the police found in his bedroom. (J.A. 20, 95-103.)

Stevens' jury trial commenced on July 25, 2006. He proceeded to trial on the People's third amended superseding information, which charged him with two counts of burglary in the third degree, in violation of V.I. Code Ann. tit. 14, § 444(1) and V.I. Code Ann. tit. 14, § 11(a). Count I concerned the burglary at 7A. Count II concerned the burglary at 7B.[1]

_____

[1] The People filed several charging documents prior to trial. On December 9, 2005, the People filed a six-count criminal information against Stevens, which charged him and co-defendant Lawton Prince with: two counts of burglary in the third degree, pursuant to V.I. Code Ann. tit. 14, § 444(1) and V.I. Code Ann. tit. 14, § 11(a); two counts of grand larceny/principals, in violation of 14 V.I.C. 1083(1) and 14 V.I.C. 11(a); and two counts of possession of stolen property, in violation of V.I. Code Ann. tit. 14 § 2101(a)(2). On December 19, 2005, the People filed a superseding information. On July 20, 2006, the People

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 5

During Stevens' trial, he renewed his challenge to the admissibility of the written confession. VIPD officers testified, evidence was presented and in a departure from its previous ruling, the court concluded that the written confession, including page 5, would be admitted in its entirety. The Court specifically held that,

> Fourth Amendment violations... protect citizens from unreasonable law enforcement personnel... with respect to the search of the[ir] residence[s]. However, what controls the admission of statements is the Fifth Amendment... [Here,] where the police properly Mirandized a defendant... and that person knowingly and voluntarily waived his rights that statement is admissible[.] [I]t is not affected by a prior unreasonable search, particularly... where that search occurred on October 31, 2005. The statement that was taken in [] December 9th . . .of 2005, approximately . . . a month and nine days after the . . . illegal search was affected. [] [Hence, Stevens] was put on notice of his rights. . . I find that he knowingly, voluntarily waive[d] those rights and gave a statement. . . I might also add that that [sic] statement was also witnessed and that he was in the presence of a friendly person in the nature of his mother.
>
>                          .   .   .   .   .
>
> The court reverses its earlier ruling where the Court restricted a portion of the statement. . . I now find that the statement that the defendant gave on December 9[th] is wholly admissible . . . .

_____     ___ ___

filed an amended superseding information along with a motion to amend, which was granted.  The amended superseding information dropped Stevens' co-defendant. On July 24, 2006, the People filed a second amended superseding information which contained the original six-counts levied against Stevens. On July 25, 2006, the People filed its third and final amended superseding information, which charged Stevens with two counts of burglary in the third degree.

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 6

(J.A. 299-300.)

After the People rested, the court denied Stevens' renewed motion for judgment of acquittal. The jury returned a unanimous guilty verdict with respect to count II, concerning the burglary at 7B. The jury acquitted him of count I, which concerned the burglary at 7A.

On October 24, 2006, Stevens was sentenced to two (2) years and thirty (30) days with the entire incarceration period suspended. (J.A. 10.) He was placed on supervised probation for a period of one year.[2] Stevens filed his timely notice of appeal on October 30, 2006.

## II.  JURISDICTION

This Court has jurisdiction to consider judgments and orders of the Superior Court in criminal cases. Revised Organic Act §

---

[2] The court's sentence imposed the following conditions: 1) 100 hours of community service; 2) seeking, obtaining and maintaining employment; 3) restitution in the amount of two thousand seven hundred seventy-six dollars and forty-nine cents ($2,776.49) to Bernadette Welcome; 4) a probation supervision fee of two hundred dollars; 5) full cooperation with the Office of Probation; 6) court costs of seventy-five dollars ($75); 7) the full compliance with the standard conditions of probation; and 8) the commitment not to violate any United States or Virgin Islands law. (J.A. 10-11.)

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 7

23A, 48 U.S.C. § 1613a;[3] Act 6687 § 4 (2004); Act 6730 § 54

(2005)(amending Act 6687); V.I. Code Ann. tit. 4, § 33 (2006).

## III. STANDARD OF REVIEW

The trial court's conclusions of law, including conclusions

concerning statutory interpretation and constitutional issues,

are subject to plenary review. *Soto v. Gov't of the V.I.*, 344 F.

Supp. 2d 450 (D.V.I. App. Div. 2004); *Charleswell v. Gov't of the*

*V.I.*, 167 F.R.D. 674, 678 (D.V.I. App. Div. 1996). The Appellate

Division reviews the Superior Court's findings of fact for abuse

of discretion. *Warner v. Gov't of the V.I.* 332 F. Supp. 2d 808,

810 (D.V.I. App. Div. 2004).

### A. Admissibility of Evidence

We generally review trial court decisions concerning the

admission and exclusion of evidence for abuse of discretion.

*Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 132 (3d Cir.

1997). However, when a ruling on the admission of evidence

implicates the interpretation of a legal standard, our review is

plenary. *United States v. Sokolow*, 91 F.3d 396, 402 (3d Cir.

1996); *Rinehimer v. Cemcolift*, 292 F.3d 375, 382-383 (3d Cir.

2002).

---

[3] The complete Revised Organic Act of 1954 is found at 48
U.S.C. §§ 1541- 1645 (1994), *reprinted in* V.I.CODE ANN.,
Historical Documents, Organic Acts, and U.S. Constitution at 159-
60 (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1)
["Revised Organic Act"].

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 8

### B.   Judgment of Acquittal

We review post-verdict motions for judgment of acquittal *de novo*. *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992). Our standard is the same as that which the trial court applied. *Id.* We must view the evidence in the light most favorable to the jury verdict and presume that the jury properly evaluated credibility of the witnesses, found the facts and drew rational inferences. *Id.* The verdict of a jury "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Id.*

### IV.   ANALYSIS

### A.   Admissibility of Statement

At issue here is whether Stevens' confession was sufficiently an act of free will to purge the Fourth Amendment taint. The People concede that the VIPD search of Stevens' home was unlawful and violated his Fourth Amendment rights.[4]   The

_____

[4] The purpose of the Fourth Amendment exclusionary rule is to deter unreasonable searches, no matter how probative their fruits. *Dunaway v. New York*, 442 U.S. 200, 216-217 (1979). We are well acquainted with the understanding that a search warrant, supported by probable cause, is normally necessary before law enforcement may lawfully search a person's property. *Payton v. New York*, 445 U.S. 573 (1980).  Conversely, searches of a home without a warrant are presumptively unreasonable under the Fourth Amendment. *United States v. Burton*, 288 F.3d 91, 102 (3d Cir. 2002).

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 9

People also concede that the physical evidence confiscated from Stevens' bedroom was inadmissible fruit of the poisonous tree; and that the trial court properly suppressed the physical evidence obtained therefrom.

The parties' dispute primarily concerns whether Stevens' written confession is constitutionally infirm; and whether the statement should have been suppressed at trial.

Stevens' confession contains the following written colloquy,

Q.   Mr. Stevens, explain to me what happened at #7a
     New Street Christiansted.


A.   On October 31, 2005, at approximately 0800 hrs,
     in the morning Mr. Lawton Prince, and another
     guy, came for me. . . . He was telling me that he
     wanted to go into the house and I was refusing. I
     refused about two times and since being that I
     didn't have a job at the time I gave in and went
     along with what he wanted to do. I got dress, and
     went along with them. As we entered the property,
     the other fellow with the crow bar was trying to
     get or pried open the louver. He could not get
     the louver out, he then pulled out the whole [ ]
     window frame. After he pried open the window, we
     went in the house and we began to search the
     house.


Q.   Mr. Eric Stevens, who all was or were present at
     the lawyer['s] house?

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 10

A.    Eric Stevens. Lawton Prince and a Crack Head.

                    . . . .

Q.    Mr. Stevens, what items did you took [sic] from
      the house?

A.    Binoculars, digital camera, 3 white pearl strand
      bracelets.

                    . . . .

Q.    Mr Eric Stevens, is this a true statement to the
      best of your knowledge?

A.    Yes.

(J.A. 462-464.)

Where a Fourth Amendment violation "taints" a confession, a

finding of voluntariness for purposes of the Fifth Amendment is a

minimum requirement to determining whether the confession may be

admitted into evidence. *See Oregon v. Elstad*, 470 U.S. 298, 306

(1985)(citing *Taylor v. Alabama*, 457 U.S. 687, 690 (1982)).

However, voluntariness is merely a threshold requirement. *Id.*  To

sufficiently purge the taint, the prosecution must also show a

sufficient "break in events" to undermine the inference that the

confession was caused by the Fourth Amendment violation.[5]  *Id.*

In *Commonwealth of Pennsylvania ex rel. Craig v. Maroney*,

---

[5] The burden of showing admissibility, rests on the
prosecution. *Brown*, 422 U.S. at 604.

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 11

348 F.2d 22, 30 (3d Cir. 1965), the U.S. Court of Appeals for the

Third Circuit articulated the following three-part inquiry to

determine whether there was a sufficient break in events to purge

the taint between an illegal arrest and a subsequent, voluntary

confession:

(a)     the proximity of an initial illegal custodial act
        to procurement of the confession; and

(b)     the intervention of other circumstances subsequent
        to an illegal arrest which provide a cause so
        unrelated to that initial illegality that the
        acquired evidence may not reasonably be said to
        have been directly derived from, and thereby
        tainted by, that illegal arrest; and

(c)     the purpose and flagrancy of the official
        misconduct.

*Id.* at 29[6]; *see also United States v. Burton*, 288 F.3d 91, 99-

100 (3d Cir. 2002); *see also United States v. Rivera-Padilla*,

2010 U.S. App. LEXIS 3125 (3d Cir. Feb. 17, 2010).

The first inquiry assesses "the measure of attenuation

between illegal police conduct and the evidence allegedly

exploited from it." *Burton*, 288 F.3d at 100. This primary

assessment concerns time and distance, is "largely a matter of

degree" and is invariably fact-specific. *Id.* (citing *Brown v.*

*Illinois*, 422 U.S. 590, 609 (1975)).

_____  _____

[6] *Maroney* interpreted *Wong Sun v. United States*, 371 U.S.
471 (1962), and its fruits of the 'poisonous tree' doctrine. *See*
*Maroney*, 348 F.2d at 22-30.

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 12

Here, Stevens' confession was neither in close physical nor temporal proximity to the illegal search. The illegal search occurred at Stevens' residence. Stevens confessed at a police station. The confession occurred over thirty days after the illegal search. Hence, considerable time and distance attenuated the illegal search and Stevens' confession. *See Maroney*, 348 F.2d at 22, 30 (confession obtained five days after Fourth Amendment violation did not have the taint of the poisonous tree); *compare Rivera-Padilla,* 2010 U.S. App. LEXIS 3125 (confession obtained five hours after the illegal search and without *Miranda* warning was tainted by Fourth Amendment violation).

The second inquiry calls into question whether intervening circumstances sufficiently purged the primary taint. *See, e.g., Brown*, 422 U.S. at 602 (emphasis added); *Murray v. United States*, 487 U.S. 533, 537 (1988). The test is holistic. *Brown*, 422 U.S. at 602. No single fact is dispositive. *Id*. The "'workings of the human mind are too complex, and the possibilities of misconduct too diverse' to allow for an overly technical rule premised on one overriding factor." *Id*. at 604. Thus, the question whether a confession is the product of free will must be answered on the facts of each case. *Id*. at 603.

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 13

In *United States v. Schettler*, investigating agents improperly seized the defendant. 32 Fed. Appx. 14, 15 (3d Cir. 2002). The defendant confessed. *Id.* The confession was made in close physical and temporal proximity to the arrest. *Id.* Nonetheless, the Court of Appeals held that intervening circumstances purged the taint. *Id.* The intervening factors included: that law enforcement holstered their weapons and limited their numbers; and that the defendant voluntarily invited the agents into his kitchen where the questioning took place. *Id.* The Court also considered that Schettler knowingly signed a consent form prior to giving his confession. Ultimately, the Third Circuit upheld the trial court's decision to admit the confession. *Id.* at 16.

Here, the attenuation is even more compelling than in *Schettler*. Several intervening circumstances occurred between the illegal search and Stevens' subsequent confession. Stevens, like Schettler, voluntarily signed a consent form. Like Schettler, he was informed of his rights and waived those rights prior to giving his oral confession. Stevens also voluntarily signed a written confession.[7] As the trial court noted, when

_____

[7] "[A] statement is involuntary when the suspect's will was overborne in such a way as to render his confession the product of coercion. *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002)(quoting *Arizona v. Fulimante*, 499 U.S. 279 (1991).

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 14

Stevens signed the waiver and confession, he was in the presence
of his mother and brother. Indeed, his mother, persuaded Stevens
to return to face the consequences of his conduct. Stevens'
brother witnessed his confession. Finally, no evidence was
adduced that Stevens suffered from any incapacity that rendered
him particularly susceptible to suggestion or questioning.

As the Third Circuit explained in *Desumma v. United States*,
"[a]pplying [the] fruits doctrine where the evidence is obtained
as a result of a voluntary statement, would be inconsistent with
deterring improper police conduct and the goal of assuring
trustworthy evidence." 272 F. 3d 176, 180 (3d Cir. 2001)(citing
*Elstad v. U.S.*, 470 U.S. 298, 305 (1985)). *DeSumma* and *Elstad*
further emphasize that "voluntary statements remain a proper
element in law enforcement" and admissions of guilt, "if not
coerced, are inherently desirable." *Desumma*, 272 F.33d at 180.
As such, because the evidence on record does not support a
conclusion that Stevens' confession was involuntary or coerced;
and because his confession was not derived from the government's
illegal search, we uphold the trial court's decision to admit
the confession.

**B.    Judgment of Acquittal**

Stevens' acquittal argument is two-fold. First, he posits

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 15

that there was insufficient evidence adduced at trial to sustain

his conviction because his confession was not corroborated.

Second, he contends that the jury's verdict was not supported by

the evidence.

### 1.    Corroboration

Under Third Circuit jurisprudence, to properly corroborate

a criminal defendant's confession, the Government must introduce

substantial independent evidence which tends to establish the

trustworthiness of the statement. In *Gov't of V.I. v. Harris*,

938 F.2d 401, 409 (3d Cir. 1991), the Third Circuit addressed

the requirement that criminal confessions be corroborated. It

held that:

> in order to convict a defendant of a crime based upon
> an extrajudicial confession or admission, the
> defendant's statement must be corroborated. The major
> purpose of this rule is to prevent errors in
> conviction based upon untrue confessions alone.
> However, a confession, especially one that survives
> the multiple attacks that can be made upon its
> admissibility, has traditionally been regarded as
> extraordinarily reliable evidence of the defendant's
> guilt.

938 F.2d 409 (internal citations and quotation marks omitted).

The corroboration requirement does not mandate that there

be a second party corroborating that the person actually

confessed, instead the government may introduce "substantial

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 16

independent evidence" which would tend to establish the
trustworthiness of the statement.[8] *See, e.g., United States v.
Fraizer*, 434 F.2d 994 (5th Cir. 1970)(it is sufficient if
corroboration supports the essential facts admitted to justify a
jury inference of their truth); *United States v. Ryan*, 99 F.2d
864, 870 (8th Cir. 1938)(the independent proof need not be
strong enough in itself to establish the *corpus delicti*).
Therefore, in reviewing the corroboration requirement, the
lynchpin inquiry is: whether there is sufficient extrinsic
evidence tending to corroborate the confession. *United States v.
Whittaker*, 67 Fed. Appx. 697, 700 (3d Cir. 2003); *see also
Sterling*, 555 F.3d at 455. If so, then the confession is
admissible.[9] *Id*.

Bernadette Welcome lived at 7B. Ms. Welcome testified that
she observed that the metal louver on the guest bedroom window
of 7B was partially out of its frame. Her testimony was
consistent with Stevens' account that his "crack head" companion

---

[8] The advantage of the trustworthiness doctrine "lies in its
simplicity and its direct bearing on the reliability of the facts
stated in the confession or admission." *Harris*, 938 F.2d 410;
*States*, 348 U.S. 147 (1954); *see also United States V. Wilson*,
436 F.2d 122 (3d Cir. 1971).

[9] The independent evidence serves a dual function. *United
States v. Baker*, 293 F.2d 613, 616 (3d Cir. 1961). It tends to
make the admission reliable, thus corroborating it while also
establishing independently the other necessary elements of the
offense. *Id*.

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 17

pried metal louvers out of the window frame at 7B to gain access
to the residence. (J.A. 204.)

Additionally, Ms. Welcome testified as to the items stolen
from her home. Her description matched the items that Stevens
admitted stealing. (J.A. 34, 212-213, 462.) Ms. Welcome also
confirmed that she did not give anyone permission to enter her
residence on October 31, 2005, and specifically that Stevens did
not have permission to enter her residence.  As such, her
testimony corroborated the essential elements of Stevens'
confession. As such, substantial, independent circumstantial
evidence existed to establish the trustworthiness of Stevens'
confession.

### 2.  Sufficiency of the Evidence

Stevens was convicted of burglary in the third degree, in
violation of Title 14 of the Virgin Islands Code, section
444(1)("count II"). To prove third-degree burglary, the People
bore the burden to prove beyond a reasonable doubt: 1) that
Stevens broke into and entered the dwelling house of another,
and 2) that he had the intent to commit an offense therein.[10]

---

[10] Larceny is defined as the unlawful taking, stealing,
carrying, leading, or driving away of the personal property of
another under Title 14 of Virgin Islands Code section 1801. The
People were required to prove that Stevens: (1) broke into the
dwelling; (2) with the intent to unlawfully take property from
it.

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 18

*Herbert v. Gov't of the V.I.*, 2005 WL 1712465, at *2 (D.V.I.

App. Div. July 14, 2005).[11]

Stevens confessed.[12] In his written statement, Stevens

admitted that on October 31, 2005, he was approached by Lawton

Prince and another individual about entering Ms. Welcome's

residence at 7B. (J.A. 461-462.) He confessed that although he

initially refused to break into the home, he ultimately agreed

because he did not have a job at the time. (J.A. 462.) Stevens

admitted that a "crack head" used a crow bar to pry open the

louver and pull the window out; and that he and his cohorts

---

[11] Stevens was also charged with aiding and abetting under
Title 14 section 11(a) of the Virgin Islands Code. Specifically,
section 11(a) provides: whoever commits a crime or offense or
aids, abets, counsels, commands, induces or procures its
commission, is punishable as a principal. Under the aiding and
abetting theory, the appellant's guilt "may be established
without proof that he personally did every act constituting the
offense alleged but rather that he aided in the commission of the
offense and thus is punishable as a principal. *Government of the
Virgin Islands v. Davis*, 39 V.I. 72, 80 (Terr. Ct. Stt/Stj 1997).
So long as he willfully associated himself in some way with the
criminal venture and willfully participated in it as he would in
something he wished to bring about, he can be held liable. *Id.*;
*see also United States v. Xavier*, 2 F.3d 1281, 1288 (3rd Cir.
1993).

[12] We employ the terms "confession" and "admission"
interchangeably. A confession is a statement admitting or
acknowledging all facts necessary for conviction of the crime.
*Gov't of the V.I. v. Harris*, 938 F.2d 401, 409 (3d Cir.
1991)(citing Black's Law Dictionary 156 (5th ed. 1983)). An
admission, on the other hand, is an acknowledgment of a fact or
facts tending to prove guilt which falls short of an
acknowledgment of all essential elements of the crime. *Id.*

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 19

entered the residence through the window and searched the house. (*Id.*) Finally, Stevens admitted that he stole items that he found therein. (*Id.*) Stevens' confession, which was corroborated by Ms. Welcome's testimony, provided sufficient evidence for a reasonable trier of fact to return a guilty verdict on count II.

## V.   CONCLUSION

For the foregoing reasons, we affirm Stevens' conviction.

## CARROLL, J., *dissenting*

My esteemed colleagues conclude that because Stevens confessed, his confession was voluntary and that it purged the taint of the Government's illegal search. However, under these facts, I believe that Stevens' confession flowed directly from the illegal search.  I am compelled, therefore, to respectfully dissent.

As the majority succinctly points out, where a Fourth Amendment violation "taints" a confession, a finding of voluntariness for purposes of the Fifth Amendment is a minimum requirement to determining whether the confession may be admitted into evidence. *See Oregon v. Elstad*, 470 U.S. 298, 306 (1985)(citing *Taylor v. Alabama*, 457 U.S. 687, 690 (1982)).

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 20

Voluntariness, however, is merely a threshold requirement. *Id.* To sufficiently purge the taint, the prosecution must also show a sufficient "break in events" to undermine the inference that the confession was caused by the Fourth Amendment violation. *Id.*

Relying upon the same cases cited by the majority, I agree that the fact-specific inquiry concerning a "break in events" charges this Court to determine the measure of attenuation between the illegal police conduct and the evidence allegedly <u>exploited</u> from it. *United States v. Burton*, 288 F.3d 91, 99-100 (3d Cir. 2002)(emphasis added). However, where the majority sees a temporal and geographic break between the proximity of the illegal search and Stevens' confession, I perceive a continuum of events in which the unlawful search and seizure was pointedly exploited to illicit Stevens' confession.

As the majority notes, for the causal chain between the police illegality and the subsequent statements to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." *Brown v. Illinois*, 422 U.S. 590, 602 (1975)(citing *Wong Sun v. United States,* 371 U.S. 471, 486 (1963)). *Wong Sun*, thus, mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment. *Id.*

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 21

Here, it is true that time elapsed between the illegal search and confession. However, when Stevens returned to St. Croix from St. Thomas, sat in the police interrogation room, was read his *Miranda* rights, waived his right to counsel and was confronted with an arrest warrant listing items seized from his residence; he was neither aware that the evidence supporting the arrest warrant was illegally obtained, nor was he aware that such evidence could not be used to convict him because of its illegality. Moreover, Stevens only returned to St. Croix from St. Thomas because a warrant had been issued for his arrest.[1] Because Stevens was pressured to appear and confess under the weight of improperly obtained evidence, it seems clear to me that neither time nor distance presented a meaningful break in events sufficient to purge the taint of the illegal search.

Under *Wong Sun*, when evaluating whether a confession is obtained by exploiting illegal police conduct, "the flagrancy of the official misconduct is [also] relevant." *Wong Sun*, 371 U.S. at 491. Under the facts of this case, it seems patent that this

---

[1] Absent the illegally obtained evidence, I also question whether sufficient probable cause or a good faith exception existed to support Stevens' arrest warrant. *United States v. Herring*, 555 U.S. 135 (2009) ("The Fourth Amendment forbids unreasonable searches and seizures, and this usually requires the police to have probable cause or a warrant before making an arrest.").

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 22

defendant confessed as a direct result of being confronted, by police with 'evidence' illegally obtained from his bedroom.

It is undisputed that law enforcement's search of Stevens' room was illegal. The evidence obtained from the room was unquestionably fruit of the poisonous tree; and the police should have known that the seizure was illegal at the time of the search.[2] Moreover, after the improper search and seizure was conducted, the use of the unlawfully obtained fruit had a quality of purposefulness. Law enforcement directly leveraged the illegally obtained evidence to: support an arrest warrant; induce Stevens' appearance and interrogation; and finally, pressure this defendant to confess. This sequence of events amounts to flagrant police misconduct. Hence, while recognizing that the exclusionary rule is not an individual right, I believe that the rule applies here as an appreciable deterrent for future Fourth Amendment violations. *See Herring v. United States*, 555 U.S. 135 (2009)(the judicially created exclusionary rule applies where it "results in appreciable deterrence."); *Elkins v. United States*, 364 U.S. 206, 217 (1960) (The purpose

---

[2] "[T]he deterrent purpose of the exclusionary rule mandates that the test for whether the good faith exception applies is objective: "the fruits of an unconstitutional search [or seizure] should be suppressed if, despite the magistrate's authorization, an objectively reasonable, well-trained officer would have known that the search violated the Fourth Amendment." *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002)(citing *United States v. Leon*, 468 U.S. 897, 919 (1984)).

of the exclusionary rule "is to deter -- to compel respect for the constitutional guaranty in the only effectively available way -- by removing the incentive to disregard it."); *see also United States v. Calandra*, 414 U.S. 338, 347 (1974)("[T]he [exclusionary] rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.").

In sum, Stevens' confession was a fruit of police illegality and should have been excluded. In my opinion, to decide otherwise offends the Fourth Amendment, encourages future violations and undermines *Wong Sun*. *See, e.g.*, *Brown*, 422 U.S. at 605(where a confession is the fruit of police illegality, the "statement [is] admissible only if we overrule *Wong Sun*."). Yet, the majority does not give sufficient weight to the fact that law enforcement directly used unlawfully obtained evidence to support probable cause for an arrest warrant and, ultimately, to pressure Stevens to confess.  To me, the majority's conclusion, while stating the accurate legal standards, reaches a myopic result that runs contrary to the spirit of the Fourth Amendment and jurisprudence interpreting it.[3]

_____

[3] The purpose of the exclusionary rule, premised on the Fourth Amendment, is to deter police from engaging in conduct that violates citizens' constitutional rights. *Zimmerman*, 277 F.3d at 436. This deterrent purpose assumes that the police have engaged in willful or negligent conduct resulting in the

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 24

I highlight my position by emphasizing the governing standard of review.  Stevens' confession ultimately turns on a question of admissibility, "[a]nd the burden of showing admissibility rests, of course, on the prosecution." *Brown*, 422 U.S. at 604.

I concede that this is a close call. However, at a minimum, the exclusionary rule and the Fourth Amendment's policies, considered together with the burden of contested admissibility resting on the prosecution, demand that we remand this matter for further consideration.  If the determination of this matter were to rest with me, I would reverse the trial court's admissibility ruling, exclude Stevens' constitutionally offensive confession in its entirety, vacate Stevens' judgment of conviction and remand this mater for a new trial. *Kaupp v. Texas*, 538 U.S. 626, 633 (2003)(remanding for new trial where

deprivation of constitutional rights. *See United States v. Peltier*, 422 U.S. 531, 539 (1975)(quoting *Michigan v. Tucker*, 417 U.S. 433, 447 (1974)). By excluding illegally obtained evidence, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused." *Id*. Thus, the deterrent purpose of the exclusionary rule mandates that the test for whether the good faith exception applies is objective: "'the fruits of an unconstitutional search [or seizure] should be suppressed if, despite the magistrate's authorization, an objectively reasonable, well-trained officer would have known that the search violated the Fourth Amendment.'" *Zimmerman*, 277 F.3d at 436 (citing *Leon*, 468 U.S. at 919)).

*Eric Stevens III v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/0044
Memorandum Opinion and Dissent
Page 25

the State failed to demonstrate "any meaningful intervening

event" between police illegality and subsequent confession); *see*

*also United States v. Butts*, 704 F.2d 701, 705 (3d Cir.

1983)(reversing and remanding for new trial where *Miranda*

warning did not, by itself, purge the taint of unlawful police

conduct).